SOO SAND & GRAVEL CO. *v.* M. SULLIVAN DREDGING CO.

1. ACTION—RIGHT OF ACTION.
   Generally one may not sue first and acquire right of action afterward; nor, generally, do courts clothe merely equitable claimant with ability to adopt legal proceedings in his own name.

2. SAME—USES AND TRUSTS—GRAVEL TAKEN FROM BED OF LAKE—NAVIGABLE WATERS—STATUTES.
   Plaintiff having right to every substantial interest in property conveyed, and absolute right to have record title, has right to maintain action for gravel wrongfully taken from Lake Superior within one mile from shore of said property (2 Comp. Laws 1929, §§ 5981, 5982), although record title through error was in another (3 Comp. Laws 1929, § 12975).

3. NAVIGABLE WATERS—RIGHT TO TAKE GRAVEL FROM BED OF LAKE—LEASES.
   Owners and lessees from State of shore lands fronting on Great Lakes have exclusive right to take gravel from bed of lake within one mile from shore after entering into lease with State (2 Comp. Laws 1929, §§ 5981, 5982).

On title to beds of natural lakes or ponds, see annotation in 23 A. L. R. 772.

4. SAME—RIPARIAN RIGHTS—EMINENT DOMAIN.
   Riparian rights are property not generally to be taken by State without just compensation to owner.

5. SAME—LEASING RIGHT TO TAKE GRAVEL FROM BED OF LAKE—STATUTES.
   Department of conservation has no authority, under 2 Comp. Laws 1929, §§ 5981, 5982, to enter into lease with one other than owner of land fronting on Great Lakes giving lessee right to take gravel from bed of lake in front of owner's land, and it is immaterial that owner has acquired no lease or right to take gravel under said statute.

6. SAME—STATUTES—CONSTRUCTION—DEPARTMENT OF CONSERVATION.
   3 Comp. Laws 1929, §§ 5981, 5982, providing for exclusive leasing by State to owner or lessee of land fronting on Great Lakes right to take gravel from bed of lake in front of said lands is restriction on general authority of department of conservation to lease, and therefore department has no authority under general statute (2 Comp. Laws 1929, § 5955 *et seq.*) to lease said right to one other than owner of land.

7. STATUTES—PRACTICAL CONSTRUCTION.
   Construction placed upon statute by State officers plainly repugnant to its provisions may not be sustained by courts as practical construction.

Appeal from Chippewa; Runnels (Herbert W.), J. Submitted April 12, 1932. (Docket No. 90, Calendar No. 36,231.) Decided September 16, 1932.

Case by Soo Sand & Gravel Company, a corporation, against M. Sullivan Dredging Company, a corporation, and another for trespass upon lake bottom adjacent to plaintiff's land. Directed verdict and judgment for defendants. Plaintiff appeals. Reversed, and new trial granted.

*Albert E. Sharpe* (*John W. Shine*, of counsel), for plaintiff.

*Albert G. Goetz* (*Fred C. Weyher*, of counsel), for defendant M. Sullivan Dredging Company.

CLARK, C. J. Plaintiff, averring its sole right as owner of lands fronting on Lake Superior to take gravel from the lake and within one mile from shore of such lands, and that defendants had taken gravel from such portion of the lake wrongfully, sued for the value thereof. The case is planted on 2 Comp. Laws 1929, §§ 5981 and 5982, quoting:

"5981. Removal of earth from bed of Great Lakes; exclusive right in owners and lessees fronting lakes Superior and Michigan; mode; special clause in lease; valuation of removable material, period; removal of obstructions; application of act, extent. SEC. 27. The owners and lessees from the State of lands fronting upon Lakes Superior and Michigan, and the bays and harbors connected with said lakes, shall have the exclusive right and privilege of taking and removing marl, stone, sand, gravel and earth from the bed of any of the Great Lakes, and the bays and harbors connected with said lakes, adjoining and lying immediately in front of their respective lands, and extending one mile from the low water mark of said lakes, bays and harbors. And for the purpose of removing such marl, rock, stone, sand, gravel and earth, any owner or lessee from the State shall have the right to anchor, by piling or otherwise, dredges, scows, boats and vessels and shall have the right to make excavations in the bed of the Great Lakes, and the bays and harbors connected with said lakes, fronting such owner's and lessee's land and within one mile from the beach or shore at low water mark: *Provided,* That the right and privilege of taking and removing marl, stone, rock, sand and earth, shall not accrue to nor be exercised by any person or persons, firm or corporation unless the same is included in a lease of such lands or made the subject of a special clause of a lease, application for which shall be made in the same manner as provided herein with respect to

leases for other purposes. The said public domain commission is hereby authorized and empowered and it is hereby made its duty to evaluate the marl, rock, stone, sand, gravel and earth so proposed to be taken and removed, and to enter into agreements in such leases for periods not exceeding ten years with respect thereto and grant to such applicants, as lessees, the right and privilege of taking and removing such marl, stone, rock, sand, gravel and earth, excepting deposits of gold, silver, iron, copper and other valuable minerals, upon such conditions and for such consideration as may be deemed fair and reasonable by said public domain commission, based upon the valuation made, not inconsistent with the other provisions of this act. Any special clause in a lease relating to the removal of marl, rock, stone, sand, gravel and earth, shall be considered and deemed a separate agreement, which shall expire by limitation at the determination of the period provided for therein, independent of the other terms of such lease: *Provided,* That nothing herein contained shall be construed to prevent the removal of obstructions and deposits at the mouths of the several rivers and harbors of the State for the purpose of maintaining and improving navigation: and *provided further,* That the provisions of this act shall not apply to owners and lessees of such lands fronting upon Lakes St. Clair, Huron and Erie, at a greater distance than five hundred feet from the shore line of such lands at low water mark, and the public domain commission shall not by lease, grant or otherwise purport to extend to any owner or lessee of such lands, the ownership, use or control of the bed of said lake beyond a distance of five hundred feet from the shore line thereof at low water mark.

"5982. Same; paramount public rights; unlawful without consent; civil liability, penalty. SEC. 28. The rights of such owners and lessees under section twenty-seven of this act shall be subject to the para-

mount rights of navigation, hunting and fishing, which rights are to remain in the general public and government as now existing and recognized by law. It shall be unlawful for any person to remove marl, rock, stone, sand, gravel and earth from the bed of the Great Lakes, and the bays and harbors connected with said lakes along and in front of the land owned or leased from the State by any other person and for a distance of one mile from the beach or shore at low water mark, without such owner's or lessee's consent. And any person who shall remove marl, rock, stone, sand, gravel or earth from the bed of the Great Lakes, and the bays and harbors connected with said lakes, in front of the lands of any other person and within one mile of the beach or shore at low water mark, without such owner's or lessee's consent, except as provided in section twenty-seven hereof, shall be liable to the owner or lessee of such land for the full value of the marl, stone, rock, sand, gravel and earth thus taken, and also be liable to a penalty of one hundred dollars to be recovered in a suit at law.''

The material covered by the act will be called gravel.

Plaintiff had acquired no lease or right to take the gravel under the statute.

Defendant dredging company had entered into a lease with the department of conservation of the State which purported to give right to defendant to remove the gravel in question.

A verdict was directed for defendants and judgment entered thereon. Plaintiff has appealed.

The record title to the shore lands was not in plaintiff at and before bringing suit, but, due to blunder in conveying, was in Fred C. Lapish, who owned nearly all the capital stock. The consideration was furnished by the plaintiff, and Lapish acted for it in the transaction and ought to have taken title

in plaintiff, and his failure so to do is constructive though not intentional fraud. The blunder being discovered just before trial, Lapish conveyed to the corporation. Lapish, acting for the corporation, had caused this suit to be commenced. He was the chief witness in its behalf at the trial. The plaintiff was the only party injured by the trespass complained of, for the lands and the right of action, in truth and fact, belonged to it alone, and at all times here in question it had "the right to every substantial interest in the property conveyed" (*Uhl* v. *Weiden*, 122 Mich. 638), and the absolute right to have the record title. 3 Comp. Laws 1929, § 12975.

We recognize the general rule that one may not sue first and acquire the right of action afterward (*Schwier* v. *Atlas Assurance Co.*, 227 Mich. 104), and that generally courts do not clothe the merely equitable claimant with the ability to adopt legal proceedings in his own name (*Forrest* v. *O'Donnell*, 42 Mich. 556), but this case is most exceptional. To make exception here would not actually invade the province of trustees, for this merely constructive trust is strictly not a trust at all but merely a remedy administered in certain fraudulent breaches of trusts. 1 Perry on Trusts (7th Ed.), § 166. No one would be harmed. Judgment here would be conclusive. We think of no just reason for the refusing the holding suggested in *Moyer* v. *Scott*, 30 Mich. 345, an action by a land contract purchaser in trespass to lands, quoting:

"If the land had been entirely paid for, or if the contract had been performed in full, a question might arise whether such a possessory right had not arisen that it needed no further aid from the holder of the legal title. And, in case that should be deemed essential, the question whether a deed to which the purchaser was at the time absolutely entitled might

not, when subsequently executed, relate back to such time to uphold an action, would differ very much from the question presented here. In both of those cases, the purchaser is the only person who can be injured by the spoliation of the land."

Plaintiff had right of action.

The first sentence of section 27, above quoted, gives to owners and lessees from the State of shore lands the *exclusive* right to take gravel as stated. It does not give a mere preference to such owners and lessees, but the exclusive right. But such right may not be exercised until and unless such an owner or lessee enters into the lease provided by the act. A lessee of shore lands from the State may have incorporated into his lease the statutory provision respecting taking gravel from the lake.

Section 28 repeats in substance the first sentence of section 27 by saying that no one may take the gravel without consent of such owner or lessee of the shore lands. And it gives right of action to such owner or lessee against anyone who takes gravel without his consent, and owner or lessee may not consent, of course, until and unless he has entered into the lease provided by the act.

The paramount right of the Federal government in navigation is recognized.

As both parties claim under the statute, it is not contended to be invalid in any respect, nor is it argued to be without the power of the State nor in violation of its holding of lake bottom lands in trust. *Nedtweg* v. *Wallace,* 237 Mich. 14. It is assumed that taking the gravel from the lake is "without detriment to the public interests in the lands and waters remaining." *Illinois Central R. Co.* v. *Illinois,* 146 U. S. 387 (13 Sup. Ct. 110). There are reasons for provision that shore owner of privately-owned lands shall have exclusive right to enter into

such lease, namely, riparian (or littoral) rights, which are property not generally to be taken by the State without just compensation to the owner. There can be no invasion of these rights for the mere purpose of selling gravel.

In *Hilt* v. *Weber,* 252 Mich. 198, 225 (71 A. L. R. 1238), it is said:

"Generally speaking, riparian rights are:

"(1) Use of the water for general purposes, as bathing, domestic use, etc. (2) To wharf out to navigability. (3) Access to navigable waters. 27 R. C. L. pp. 1070, 1375; 45 C. J. p. 491; Black's Pomeroy on Water Rights, p. 517. * * * (4) The right to accretions.

"Riparian rights are property, for the taking or destruction of which by the State compensation must be made, unless the use has a real and substantial relation to a paramount trust purpose. 45 C. J. p. 491; 1 Farnham on Waters and Water Rights, p. 297; *United States* v. *River Rouge Improvement Co.,* 269 U. S. 411 (46 Sup. Ct. 144); *Illinois Central R. Co.* v. *Illinois, supra.* The State cannot impair or defeat riparian rights by a grant of land under water (*McLennan* v. *Prentice,* 85 Wis. 427 [55 N. W. 764, 23 A. L. R. 772, note]); nor cut off the owner's access to the water by construction of a highway (1 Farnham on Waters, p. 301); nor grant to strangers the right to erect wharves in front of his property (*Id.,* pp. 382, 383); nor erect a bathhouse on the shore to interfere with the right of access (*Tiffany* v. *Oyster Bay,* 234 N. Y. 15 [136 N. E. 224, 24 A. L. R. 1267]). On the contrary, the right of the State to use the bed of the lake, except for the trust purposes, is subordinate to that of the riparian owner (*Town of Orange* v. *Resnick,* 94 Conn. 573, 578 [109 Atl. 864, 10 A. L. R. 1046]), where it was said:

"'The only substantial paramount public right is the right to the free and unobstructed use of navigable waters for navigation.'"

The statute does not invade riparian rights. It recognizes them by according to the shore owner exclusive rights to enter into the lease and to take the material from the lake. It is hardly to be thought that the legislature would ignore the riparian proprietor and provide that his right of bathing might be violated, that his right to wharf out to navigability might be impaired, or that any of his rights might be invaded. Indeed, it is said this statute was passed on petition of shore owners along Lake Michigan who complained of sandsuckers destroying bathing beaches.

It is not questioned that the legislature may provide for such leasing so long as the holding in trust of such lake bottom be not violated, and the paramount right of the Federal government in navigation and the rights of riparian owners be not invaded. As to what may and what may not so offend, we are not called upon to discuss.

A shore owner is not required to enter into a lease as contemplated by the act. He may do so and he may not. This conclusion is urged as a dog-in-the-manger attitude—the owner does not take lease and no one else may do so. It is argued that if the owner does not take lease within a reasonable time (presumably after the passage of the act) any person may be given the lease. Exercising rights under such a lease might impair or destroy valuable property rights of the riparian owner, without notice or hearing, without compensation, without due process of law; this the legislature did not intend.

A riparian owner, as such, is not concerned with appropriation of material on bottom of the lake so long as his rights are not interfered with. What might or might not constitute such interference we need not consider, as the act before us offers no possible prejudice to such owner.

We find in this statute no authority conferred on the department of conservation to enter into the lease with defendant to take gravel from the lake in front of plaintiff's lands, and hold such lease void.

Right of the department of conservation to make the lease above mentioned is urged under Act No. 326, Pub. Acts 1913 (2 Comp. Laws 1929, § 5955). This is a general statute providing that all unpatented overflowed lands, made lands, and lake bottom lands belonging to the State, or held in trust by it, shall be held, leased, and controlled by the State board of control, now department of conservation. Acts Nos. 17 and 164, Pub. Acts 1921. The authority of the department is statutory. The legislature has dealt specially with respect to leases for taking gravel from lake bottom within one mile from shore, and this legislation is a restriction upon the general authority of the department to lease and it is bound thereby. The lease to defendant is contended to be sustained by practical construction of the statute first above quoted by proper State officers. A construction so plainly repugnant to the statute cannot be indulged.

Judgment reversed, with costs. New trial granted.

McDonald, Potter, North, Fead, Wiest, and Butzel, JJ., concurred. Sharpe, J., did not sit.